UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

CV 06 0590

-------------------------------------------------------------------------------X

ELLEN MCBURNEY

Plaintiff,

-against-

NEW YORK INSTITUTE OF TECHNOLOGY, AND RODIKA ZAIKA,
individually.

Defendants

CV No.

COMPLAINT
AND JURY
TRIAL DEMAND

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

FEB 09 2006    ★

LONG ISLAND OFFICE

HURLEY, J.

WALL, M.J.

-------------------------------------------------------------------------------X

Plaintiff, ELLEN MCBURNEY, by her undersigned attorney, as and for her
complaint against defendant, respectfully alleges:

## INTRODUCTION

This is an action by plaintiff Ellen McBurney for injunctive relief and damages

caused by defendant New York Institute of Technology, (hereinafter "NYIT") for

retaliation and discharge of plaintiff from employment, in violation of Section 102

of the Family and Medical Leave Act of 1993, (29 U.S.C. § 2615), and for

violations of New York common law against NYIT for negligent retention of

defendant Zaika, and against NYIT and Rodika Zaika individually for actions on

the part of defendant Rodika Zaika for her negligent and/or intentional infliction of

emotional distress toward plaintiff.

1

## **JURISDICTION AND VENUE**

1.      The jurisdiction of this Court over this controversy is invoked pursuant to 29

U.S.C. § 2617 and 28 U.S.C. § 1331, this court's pendant jurisdiction over the

common law claims is invoked by the doctrine of supplemental jurisdiction.

2.      The unlawful employment practices described herein were committed within

the State of New York, in defendant's place of business in the Eastern District

of New York. Accordingly, venue in this Court is proper pursuant to 28 U.S.C.

§ 1391(b).

3.      Plaintiff is a resident of Nassau County New York in the Eastern District of

New York.

4.      The discriminatory acts herein occurred in the Eastern District of New York.

## **PARTIES**

5.      Plaintiff Ellen McBurney is a female citizen of the United States and a

resident of the State of New York.

6.      Plaintiff was an "employee" of defendant within the meaning of 29 U.S.C. §

2611(2)(A) at the time she was terminated.

7.     Defendant New York Institute of Technology is chartered by the Board of

Regents of the University of the State of New York located at Northern Blvd.

P.O. Box 8000 Old Westbury, New York 11568.

8.     Defendant is/was an "employer" of plaintiff within the meaning of 29 U.S.C.

§ 2611(4)(A) at all times relevant to this action.

## RELEVANT STATUTORY SCHEME

9.     The FMLA 29 U.S.C. § 2615 (b) (2) forbids interference with rights under

the FMLA.

10.     The FMLA 29 U.S.C. § 2615(a) (1), which bars interference with

"prescriptive" or "substantial" rights of receiving up to 12 weeks of leave under

the FMLA.

11.     The FMLA U.S.C. §  2615(a)(2) bars interference with "proscriptive"

rights" of being free from discrimination or retaliated against for taking FMLA

leave.

12.     Intentional Infliction of emotional distress, negligent retention and negligent

infliction of emotional distress are New York Common Law pendant state

claims, evoked herein under the doctrine of supplemental jurisdiction.

## STATEMENT OF FACTS

13.    Plaintiff was hired on or about February 1992 as an Administrative Assistant

in the Admissions Office of New York College Osteopathic Medicine

("NYCOM"), an affiliate of New York Institute of Technology ("NYIT")

14.    Upon information and belief, plaintiff had excellent reviews in her position

until such time she took FMLA leave, and has never received any poor

performance evaluations nor been cited for infractions of any policy until she

returned from FMLA leave.

15.    On or about June 1, 2005, Plaintiff was placed on Family Medical Leave Act

and short term disability leave due to plaintiff's severe hypertension medical

condition and other conditions, the source of which were unknown.

16.    Plaintiff was hospitalized due to same on or about June 1, 2005.

17.    On or about July 13, 2005 plaintiff was told by her physician that she could

return to work.

18.    On or about July 14, 2005 Plaintiff notified Human Resources that she

would be returning to work on July 18, 2005.

19.    On or about July 14, 2005 Plaintiff notified her NYCOM office, specifically,

Assistant Director of Admissions Taryn Croot,  that she would be returning to

work.

20.    Upon hearing that Plaintiff would be returning to work, Ms. Croot responded

"…we don't want you to hurry back; we are all so worried about you. Why

don't you stay on disability until you are totally recovered?"

21.    On or about July 18th, 2005 plaintiff returned to work.

22.    On or about July 18th, 2005 plaintiff asked Ms. Croot to be updated on the

admissions process and asked for work.

23.    Ms. Croot ignored plaintiffs request to be updated and instead of giving

plaintiff work to do, Ms. Croot handed her a newspaper and told plaintiff to

"read it."

24.    On or about July 19th, 2005 plaintiff asked Director of Admissions Rodika

Zaika to be updated and again asked for work that needed to be done.

25.    Ms. Zaika ignored plaintiff's requests, stating that "she would let plaintiff

know" about assignments.

26.    On or about July 20th, 2005 plaintiff received an email from Ms. Zaika

entitled "Admissions Update," whereby she was placed on thirty-day probation

for errors she had allegedly made in the past, which were allegedly discovered

while plaintiff was out on leave.

27.    Such placement on probation was out of the ordinary disciplinary process,

which includes a progressive discipline system and which requires counseling

by the supervisor and participation on the part of Human Resources, as outlined

in the employee handbook.

28.  On or about  July 20th, 2005 plaintiff was given a task to complete from Ms,

Croot who sarcastically stated "…here see if you can do this"

29.  This task required an admissions update to complete.

30.  After reading Ms. Zaika's email plaintiff felt intimidated and afraid to ask

for clarification from Ms. Croot.

31.  Plaintiff thought that both Ms. Croot and Ms. Zaika were purposely not

giving plaintiff the said update in order to "set her up" for failure on the said

task.

32.  Plaintiff then replied to Ms. Zaika's email.

33.  Plaintiff then went to Ms. Zaika's office to see if Ms. Zaika received the

email and to ask for documentation and clarification as to any alleged errors.

34.  Upon information and belief, Ms. Zaika told plaintiff to "get out of her

office" and that plaintiff's response email was uncalled for and that she would

not speak to her unless Maryanne Achtziger, the associate dean, was present.

35.  Plaintiff immediately went to the Associate Dean Maryanne Achtziger's

office to discuss the problem.

36.  Ms. Zaika also went to Ms. Achtziger's office and arrived before plaintiff

and was talking to Ms. Achtizger for about 10 (ten) minutes, presumably about

6

plaintiff's performance, and the out-of-the ordinary probation she had been placed on.

37.    Plaintiff then asked Ms. Achtziger's secretary if she could talk to Ms. Achtizger.

38.    The secretary then told plaintiff that it would be "impossible" to see her because Ms. Zaika and Ms. Achtizger had an appointment with the dean, Barbara Ross- Lee.

39.    This situation caused plaintiff to feel ill and forced plaintiff to leave work and return to her home.

40.    Plaintiff then called her physician, Dr Sharma , who gave her an immediate appointment.

41.    After said appointment, plaintiff's physician said that he could not permit her to work in such work environment because the stress and hostility was exacerbating plaintiff's medical conditions.

42.    Plaintiff's physician ordered her not to work until further notice and immediately recommended that she seek psychological counseling to assist her with the situation because same was causing her extreme anxiety, thereby exacerbating her current serious medical conditions.

43.     Plaintiff's husband, Jim McBurney, informed Ms. Maureen Graughran, Associate Director of Human Resources, of plaintiff's condition and requested that plaintiff be placed on Family Medical Leave and Disability leave again.

44.     Ms, Graughran informed Mr. McBurney that a doctor's note would be needed.

45.     Plaintiff's physician faxed said note immediately.

46.     Mr. McBurney further left Ms. Zaika a voicemail message concerning plaintiff's condition.

47.     On or about July 21, 2005 plaintiff received a confirmation email from Ms. Graughran granting plaintiff's request to be placed on Family Medical Leave and Disability Leave.

48.     On or about July 22, 2005 plaintiff sent a registered letter to Ms. Graughran requesting her personnel file.

49.     On or about July 25, 2005, plaintiff received a phone call from Theresa Katsch, of Human Resources, informing plaintiff that the three days plaintiff worked from (July 18th, 2005 to July 20th, 2005) she would not be paid for these days until she returned to work.

50.     On or about July 25, 2005 plaintiff was told that Zurich, the disability insurer, would deduct 3 (three) days of payments to her.

51.    Plaintiff then asked Ms. Katsch what the procedure was for grievance, and
was told by her that there was no grievance procedure because this was not a
union job and plaintiff was not a member of the union.

52.    Plaintiff then spoke to Rick Savior, director of Human Resources, about the
grievance procedure.

53.    Mr. Savior indicated that Plaintiff needed to have a more extensive
conversation with Mr. Savior about the situation.

54.    On or about July 26, 2005 plaintiff received a letter from Mr. Savoir that her
request for her personnel file was denied.

55.    On July 31, 2005 Plaintiff sent a letter to Mr. Savior requesting an
investigation, and a transfer to another non-hostile department within NYIT.

56.    On August 10, 2005, plaintiff received a letter from human resources
denying that Zaika had placed her on a 30 day probation, ignoring plaintiff's
further disability and her request for a transfer, but rather, suggesting that the
plaintiff just return to work as if nothing ever happened and in the same
assignment and capacity.

57.    On August 15, 2005 plaintiff sent a letter to human resources with letters
from her treating psychologist and treating physician requesting a transfer to a
non-hostile department.

58.    These recommendations and requests were ignored.

59.    On the date plaintiff was placed on probation, Plaintiff's doctor then

diagnosed plaintiff as suffering from increased hypertension, a condition she

had before, and a new diagnosis of anxiety, a condition created by the threat to

her job caused by Ms. Zaika, whereby she was forbidden by her doctor to return

to work in a hostile environment, and whereby she had to be assured that she

will suffer no further retaliation or discrimination related to her illnesses.

60.    Plaintiff was instructed by her doctor to seek the services of a psycho-

therapist to assist plaintiff in reducing her anxiety and hypertension, which

treatment she commenced on or about July 25, 2005.

## CLAIMS

## AS FOR THE FIRST CAUSE OF ACTION AGAINST NYIT

61.    Plaintiff hereby repeats and realleges each allegation contained in

paragraphs 1 through 60 above.

62.    Plaintiff being placed on probation upon return from FMLA leave is in

violation FMLA 29 U.S.C. § 2615 (b) (2) because it outside of the ordinary

disciplinary procedure, serving as pretext to cause plaintiff adverse employment

activity for taking such FMLA leave.

63.    As a proximate result of the foregoing, plaintiff has been denied

employment, has lost wages, benefits, promotional opportunities and bonuses,

and has incurred damages thereby, including aggravation of her current medical

conditions, and an additional anxiety-related condition caused by Ms. Zaika's actions, requiring that plaintiff seek the assistance of a psychologist pursuant to her doctor's orders.

## AS FOR THE SECOND CAUSE OF ACTION AGAINST NYIT

64.    Plaintiff hereby repeats and realleges each allegation contained in paragraphs 1 through 63 above.

65.    Defendant's constructive discharge and/or wrongful termination of plaintiff violated plaintiff's "proscriptive" rights under FMLA U.S.C. § 2615(a)(2) of being free from discrimination or retaliated against for taking FMLA leave.

66.    As a proximate result of the foregoing, plaintiff has been denied employment, has lost wages, benefits, promotional opportunities and bonuses, and has incurred damages thereby, including aggravation of her current illnesses, and creation of anxiety requiring psychological counseling.

## AS FOR THE THIRD CAUSE OF ACTION AGAINST NYIT

67.    Plaintiff hereby repeats and realleges each allegation contained in paragraphs 1 through 66 above.

68.    Defendant retaliated against plaintiff by placing plaintiff on probation and ultimately terminating the plaintiff, interfering with plaintiff's "proscriptive" rights under FMLA U.S.C. § 2615(a)(2) of being free from retaliatory action by an employer for taking FMLA leave.

11

69.   As a proximate result of the foregoing, plaintiff has been denied

employment, has lost wages, benefits, promotional opportunities and bonuses,

and has incurred further physical and psychological damages thereby.

## AS FOR THE FOURTH CAUSE OF ACTION AGAINST NYIT

70.   Plaintiff hereby repeats and realleges each allegation contained in

paragraphs 1 through 69 above.

71.   Defendant, through its agent Rodika Zaika, in placing plaintiff on probation

outside the normal disciplinary procedure on pretextual grounds, and in forcing

plaintiff's resignation, knowing plaintiff suffered from severe hypertension,

constitutes negligent infliction of emotional distress toward plaintiff.

72.   Defendant, through its agent Rodika Zaika, in placing plaintiff on probation

and forcing plaintiff's termination, knowing plaintiff suffered from severe

hypertension, and that same would be aggravated if plaintiff were to be

immediately placed on probation without cause, constitutes outrageous conduct

towards plaintiff.

73.   As a proximate result of the foregoing, plaintiff has been denied

employment, has lost wages, benefits, promotional opportunities and bonuses,

and has incurred damages thereby. As a further proximate result of defendant's

12

actions plaintiff has suffered emotional distress, which has caused plaintiff anxiety requiring therapy and has aggravated her medical conditions.

## AS FOR THE FIFTH CAUSE OF ACTION AGAINST NYIT

74.     Plaintiff hereby repeats and realleges each allegation contained in paragraphs 1 through 73 above.

75.     Defendant, through its agent, Rodika Zaika, by placing plaintiff on pretextual probation, out of the ordinary course of disciplinary procedure, and forcing plaintiff's termination as a pretext, knowing that the plaintiff suffered from severe hypertension and other unknown illnesses that were in the process of being diagnosed, committed intentional infliction of emotional distress toward plaintiff.

76.     Defendant's acts, through its agent Rodika Zaika, by forcing plaintiff to resign, knowing plaintiff suffered from severe hypertension and other illnesses, constitutes extreme and outrageous conduct towards plaintiff.

77.     Zaika, knowing plaintiff suffered from hypertension and other unknown illnesses, intentionally caused such conduct toward plaintiff, hoping that she would resign her position, which outcome came to pass.

78.     As a proximate result of the foregoing, plaintiff has been denied employment, has lost wages, benefits, promotional opportunities and bonuses, and has incurred damages thereby. As a further proximate result of defendant's

13

actions, plaintiff has suffered emotional distress requiring medication, psychological treatment and aggravation of her current illnesses.

## AS FOR THE SIXTH CAUSE OF ACTION AGAINST NYIT

79.   Plaintiff hereby repeats and realleges each allegation contained in paragraphs 1 through 78 above.

80.   As an employer, defendant is under a duty to staff its organization with supervisors who will neither intentionally nor negligently inflict emotional distress upon employees.

81.   Defendant retained Ms. Zaika as Director of Admissions.

82.   Defendant Zaika intentionally and/or negligently inflicted emotional distress upon plaintiff.

83.   Defendant breached its duty to plaintiff.

84.   Plaintiff suffered emotional harm due to Ms. Zaika's actions of placing plaintiff on probation for pretextual reasons upon return from her FMLA leave.

85.   Plaintiff has suffered injuries thereby.

86.   As a proximate result of the foregoing, plaintiff has been denied employment, has lost wages, benefits, promotional opportunities and bonuses, and has incurred damages thereby. As a further proximate result of defendant's actions, plaintiff has suffered emotional distress requiring medication, psychological treatment and aggravation of her current illnesses.

14

## AS FOR THE SEVENTH CAUSE OF ACTION AGAINST RODIKA

## ZAIKA

87.     Plaintiff hereby repeats and realleges each allegation contained in paragraphs 1 through 86 above.

88.     Defendant Zaika, through her actions of placing plaintiff on probation outside the ordinary disciplinary procedure as a pretext, knowing that plaintiff suffered from hypertension and other unknown illnesses, committed negligent infliction of emotional distress toward plaintiff.

89.     Defendant, by her actions of placing plaintiff on probation as a pretext, knowing plaintiff suffered from severe hypertension and other unknown illnesses, constitutes severe and outrageous conduct toward plaintiff.

90.     As a proximate result of the foregoing, plaintiff has been denied employment, has lost wages, benefits, promotional opportunities and bonuses, and has incurred damages thereby. As a further proximate result of defendant's actions, plaintiff has suffered emotional distress and has had her current medical conditions aggravated, and has developed a new anxiety diagnosis, requiring medication and psychological therapy.

15

## AS FOR THE EIGHTH CAUSE OF ACTION AGAINST RODIKA

## ZAIKA

91.    Plaintiff hereby repeats and realleges each allegation contained in

paragraphs 1 through 90 above.

92.    Defendant Zaika, through her actions of forcing plaintiff's resignation

outside the ordinary disciplinary procedure as a pretext, knowing that plaintiff

suffered from severe hypertension and other unknown illnesses, constitutes

intentional infliction of emotional distress toward plaintiff.

93.    Defendant Zaika intended such actions to force plaintiff's resignation, and/or

to aggravate plaintiff's condition enough to force her into further sick leave.

94.    Defendant, through her actions, and by forcing plaintiff to resign under

pretext, knowing plaintiff suffered from severe hypertension and other

unknown illnesses, constitutes extreme and outrageous conduct towards

plaintiff.

95.    As a proximate result of the foregoing, plaintiff has been denied

employment, has lost wages, benefits, promotional opportunities and bonuses,

and has incurred damages thereby. As a further proximate result of defendant's

actions plaintiff has suffered emotional distress, and has had her current

medical conditions aggravated, causing plaintiff a new anxiety diagnosis

requiring medication and psychological therapy.

16

## **PRAYER FOR RELIEF**

WHEREFORE, plaintiff respectfully requests that this Court:

(a) Enter a judgment that defendants' retaliation against plaintiff for taking leave violated 29 U.S.C. § 2615 of the Family and Medical Leave Act of 1993;

(b) Issue a mandatory injunction pursuant to 29 U.S.C. § 2617(1)(B) directing the defendant NYIT to rehire the plaintiff retroactive to July 18th 2005 to a non-hostile position equivalent to her prior position, without interruption to the benefits and/or seniority to which she was entitled as a fourteen-year employee of defendant.

(c) Issue a mandatory injunction, pursuant to 29 U.S.C. § 2617(1)(B), directing the defendant NYIT to reinstate all of plaintiff's employment benefits, including, but not limited to, her health insurance.

(d) Enter a judgment pursuant to 29 U.S.C. § 2617(a)(1)(A)(i)(II) against the defendants and in favor of plaintiff for the monetary losses plaintiff sustained as a direct result of defendant's retaliation against plaintiff for taking leave;

(e) An order prohibiting defendant from continuing or maintaining the policy, practice or custom of denying job benefits to employees on the basis of their FMLA status and/or leave.

(f) An award to plaintiff of her actual damages in an amount to be determined at trial for loss of wages, benefits, commissions and promotional opportunities, including an award of back pay for salary lost and front pay compensating plaintiff for loss of future salary, commissions and benefits;

(g)   An award to plaintiff against NYIT in an amount to be amount to be determined at trial to compensate the plaintiff for mental anguish, humiliation, embarrassment and emotional injury and physical manifestation thereof;

(h)   An award in favor of plaintiff against defendant Zaika, in an amount to be determined at trial, to compensate the plaintiff for mental anguish, humiliation, embarrassment and emotional injury and physical manifestations thereof;

(i)   An award to plaintiff of the costs of this action, together with her reasonable attorneys' fees;

(j)   Interest on all amounts due, and

(k) Award plaintiff such further and additional relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a jury trial to try all claims triable by jury.

Respectfully submitted,

Dated: February 8, 2006

Barbara Matthews

Attorney for Plaintiff
BM4281
P.O. Box 757
125 Jefferson Ave
St. James, New York 11780
Tel: (631) 584-0163

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

CV-06 0590

-------------------------------------------------------------------X

ELLEN MCBURNEY

                Plaintiff,   (s.T.)

       -against-

NEW YORK INSTITUTE OF TECHNOLOGY, AND RODIKA ZAIKA,
individually.

                Defendants

-------------------------------------------------------------------X

CV No.

COMPLAINT
AND JURY
TRIAL DEMAND

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ FEB 09 2006 ★

LONG ISLAND OFFICE

HURLEY, J.

WALL, M.J.

Plaintiff, ELLEN MCBURNEY, by her undersigned attorney, as and for her complaint against defendant, respectfully alleges:

## INTRODUCTION

This is an action by plaintiff Ellen McBurney for injunctive relief and damages caused by defendant New York Institute of Technology, (hereinafter "NYIT") for retaliation and discharge of plaintiff from employment, in violation of Section 102 of the Family and Medical Leave Act of 1993, (29 U.S.C. § 2615), and for violations of New York common law against NYIT for negligent retention of defendant Zaika, and against NYIT and Rodika Zaika individually for actions on the part of defendant Rodika Zaika for her negligent and/or intentional infliction of emotional distress toward plaintiff.

1

## JURISDICTION AND VENUE

1.      The jurisdiction of this Court over this controversy is invoked pursuant to 29

U.S.C. § 2617 and 28 U.S.C. § 1331, this court's pendant jurisdiction over the

common law claims is invoked by the doctrine of supplemental jurisdiction.

2.      The unlawful employment practices described herein were committed within

the State of New York, in defendant's place of business in the Eastern District

of New York. Accordingly, venue in this Court is proper pursuant to 28 U.S.C.

§ 1391(b).

3.      Plaintiff is a resident of Nassau County New York in the Eastern District of

New York.

4.      The discriminatory acts herein occurred in the Eastern District of New York.

## PARTIES

5.      Plaintiff Ellen McBurney is a female citizen of the United States and a

resident of the State of New York.

6.      Plaintiff was an "employee" of defendant within the meaning of 29 U.S.C. §

2611(2)(A) at the time she was terminated.

2

7.      Defendant New York Institute of Technology is chartered by the Board of

Regents of the University of the State of New York located at Northern Blvd.

P.O. Box 8000 Old Westbury, New York 11568.

8.      Defendant is/was an "employer" of plaintiff within the meaning of 29 U.S.C.

§ 2611(4)(A) at all times relevant to this action.

## RELEVANT STATUTORY SCHEME

9.      The FMLA 29 U.S.C. § 2615 (b) (2) forbids interference with rights under

the FMLA.

10.     The FMLA 29 U.S.C. § 2615(a) (1), which bars interference with

"prescriptive" or "substantial" rights of receiving up to 12 weeks of leave under

the FMLA.

11.     The FMLA U.S.C. §  2615(a)(2) bars interference with "proscriptive"

rights" of being free from discrimination or retaliated against for taking FMLA

leave.

12.     Intentional Infliction of emotional distress, negligent retention and negligent

infliction of emotional distress are New York Common Law pendant state

claims, evoked herein under the doctrine of supplemental jurisdiction.

## STATEMENT OF FACTS

13.   Plaintiff was hired on or about February 1992 as an Administrative Assistant

in the Admissions Office of New York College Osteopathic Medicine

("NYCOM"), an affiliate of New York Institute of Technology ("NYIT")

14.   Upon information and belief, plaintiff had excellent reviews in her position

until such time she took FMLA leave, and has never received any poor

performance evaluations nor been cited for infractions of any policy until she

returned from FMLA leave.

15.   On or about June 1, 2005, Plaintiff was placed on Family Medical Leave Act

and short term disability leave due to plaintiff's severe hypertension medical

condition and other conditions, the source of which were unknown.

16.   Plaintiff was hospitalized due to same on or about June 1, 2005.

17.   On or about July 13, 2005 plaintiff was told by her physician that she could

return to work.

18.   On or about July 14, 2005 Plaintiff notified Human Resources that she

would be returning to work on July 18, 2005.

19.   On or about July 14, 2005 Plaintiff notified her NYCOM office, specifically,

Assistant Director of Admissions Taryn Croot,  that she would be returning to

work.

4

20.    Upon hearing that Plaintiff would be returning to work, Ms. Croot responded

"...we don't want you to hurry back; we are all so worried about you. Why

don't you stay on disability until you are totally recovered?"

21.    On or about July 18th, 2005 plaintiff returned to work.

22.    On or about July 18th, 2005 plaintiff asked Ms. Croot to be updated on the

admissions process and asked for work.

23.    Ms. Croot ignored plaintiffs request to be updated and instead of giving

plaintiff work to do, Ms. Croot handed her a newspaper and told plaintiff to

"read it."

24.    On or about July 19th, 2005 plaintiff asked Director of Admissions Rodika

Zaika to be updated and again asked for work that needed to be done.

25.    Ms. Zaika ignored plaintiff's requests, stating that "she would let plaintiff

know" about assignments.

26.    On or about July 20th, 2005 plaintiff received an email from Ms. Zaika

entitled "Admissions Update," whereby she was placed on thirty-day probation

for errors she had allegedly made in the past, which were allegedly discovered

while plaintiff was out on leave.

27.    Such placement on probation was out of the ordinary disciplinary process,

which includes a progressive discipline system and which requires counseling

by the supervisor and participation on the part of Human Resources, as outlined

in the employee handbook.

28.   On or about  July 20th, 2005 plaintiff was given a task to complete from Ms,

Croot who sarcastically stated "…here see if you can do this"

29.   This task required an admissions update to complete.

30.   After reading Ms. Zaika's email plaintiff felt intimidated and afraid to ask

for clarification from Ms. Croot.

31.   Plaintiff thought that both Ms. Croot and Ms. Zaika were purposely not

giving plaintiff the said update in order to "set her up" for failure on the said

task.

32.   Plaintiff then replied to Ms. Zaika's email.

33.   Plaintiff then went to Ms. Zaika's office to see if Ms. Zaika received the

email and to ask for documentation and clarification as to any alleged errors.

34.   Upon information and belief, Ms. Zaika told plaintiff to "get out of her

office" and that plaintiff's response email was uncalled for and that she would

not speak to her unless Maryanne Achtziger, the associate dean, was present.

35.   Plaintiff immediately went to the Associate Dean Maryanne Achtziger's

office to discuss the problem.

36.   Ms. Zaika also went to Ms. Achtziger's office and arrived before plaintiff

and was talking to Ms. Achtizger for about 10 (ten) minutes, presumably about

6

plaintiff's performance, and the out-of-the ordinary probation she had been placed on.

37.     Plaintiff then asked Ms. Achtziger's secretary if she could talk to Ms. Achtizger.

38.     The secretary then told plaintiff that it would be "impossible" to see her because Ms. Zaika and Ms. Achtizger had an appointment with the dean, Barbara Ross- Lee.

39.     This situation caused plaintiff to feel ill and forced plaintiff to leave work and return to her home.

40.     Plaintiff then called her physician, Dr Sharma , who gave her an immediate appointment.

41.     After said appointment, plaintiff's physician said that he could not permit her to work in such work environment because the stress and hostility was exacerbating plaintiff's medical conditions.

42.     Plaintiff's physician ordered her not to work until further notice and immediately recommended that she seek psychological counseling to assist her with the situation because same was causing her extreme anxiety, thereby exacerbating her current serious medical conditions.

43.   Plaintiff's husband, Jim McBurney, informed Ms. Maureen Graughran, Associate Director of Human Resources, of plaintiff's condition and requested that plaintiff be placed on Family Medical Leave and Disability leave again.

44.   Ms, Graughran informed Mr. McBurney that a doctor's note would be needed.

45.   Plaintiff's physician faxed said note immediately.

46.   Mr. McBurney further left Ms. Zaika a voicemail message concerning plaintiff's condition.

47.   On or about July 21, 2005 plaintiff received a confirmation email from Ms. Graughran granting plaintiff's request to be placed on Family Medical Leave and Disability Leave.

48.   On or about July 22, 2005 plaintiff sent a registered letter to Ms. Graughran requesting her personnel file.

49.   On or about July 25, 2005, plaintiff received a phone call from Theresa Katsch, of Human Resources, informing plaintiff that the three days plaintiff worked from (July 18th, 2005 to July 20th, 2005) she would not be paid for these days until she returned to work.

50.   On or about July 25, 2005 plaintiff was told that Zurich, the disability insurer, would deduct 3 (three) days of payments to her.

51.   Plaintiff then asked Ms. Katsch what the procedure was for grievance, and was told by her that there was no grievance procedure because this was not a union job and plaintiff was not a member of the union.

52.   Plaintiff then spoke to Rick Savior, director of Human Resources, about the grievance procedure.

53.   Mr. Savior indicated that Plaintiff needed to have a more extensive conversation with Mr. Savior about the situation.

54.   On or about July 26, 2005 plaintiff received a letter from Mr. Savoir that her request for her personnel file was denied.

55.   On July 31, 2005 Plaintiff sent a letter to Mr. Savior requesting an investigation, and a transfer to another non-hostile department within NYIT.

56.   On August 10, 2005, plaintiff received a letter from human resources denying that Zaika had placed her on a 30 day probation, ignoring plaintiff's further disability and her request for a transfer, but rather, suggesting that the plaintiff just return to work as if nothing ever happened and in the same assignment and capacity.

57.   On August 15, 2005 plaintiff sent a letter to human resources with letters from her treating psychologist and treating physician requesting a transfer to a non-hostile department.

58.   These recommendations and requests were ignored.

9

59.     On the date plaintiff was placed on probation, Plaintiff's doctor then
diagnosed plaintiff as suffering from increased hypertension, a condition she
had before, and a new diagnosis of anxiety, a condition created by the threat to
her job caused by Ms. Zaika, whereby she was forbidden by her doctor to return
to work in a hostile environment, and whereby she had to be assured that she
will suffer no further retaliation or discrimination related to her illnesses.

60.     Plaintiff was instructed by her doctor to seek the services of a psycho-
therapist to assist plaintiff in reducing her anxiety and hypertension, which
treatment she commenced on or about July 25, 2005.

## CLAIMS

## AS FOR THE FIRST CAUSE OF ACTION AGAINST NYIT

61.     Plaintiff hereby repeats and realleges each allegation contained in
paragraphs 1 through 60 above.

62.     Plaintiff being placed on probation upon return from FMLA leave is in
violation FMLA 29 U.S.C. § 2615 (b) (2) because it outside of the ordinary
disciplinary procedure, serving as pretext to cause plaintiff adverse employment
activity for taking such FMLA leave.

63.     As a proximate result of the foregoing, plaintiff has been denied
employment, has lost wages, benefits, promotional opportunities and bonuses,
and has incurred damages thereby, including aggravation of her current medical

10

conditions, and an additional anxiety-related condition caused by Ms. Zaika's actions, requiring that plaintiff seek the assistance of a psychologist pursuant to her doctor's orders.

## AS FOR THE SECOND CAUSE OF ACTION AGAINST NYIT

64.    Plaintiff hereby repeats and realleges each allegation contained in paragraphs 1 through 63 above.

65.    Defendant's constructive discharge and/or wrongful termination of plaintiff violated plaintiff's "proscriptive" rights under FMLA U.S.C. § 2615(a)(2) of being free from discrimination or retaliated against for taking FMLA leave.

66.    As a proximate result of the foregoing, plaintiff has been denied employment, has lost wages, benefits, promotional opportunities and bonuses, and has incurred damages thereby, including aggravation of her current illnesses, and creation of anxiety requiring psychological counseling.

## AS FOR THE THIRD CAUSE OF ACTION AGAINST NYIT

67.    Plaintiff hereby repeats and realleges each allegation contained in paragraphs 1 through 66 above.

68.    Defendant retaliated against plaintiff by placing plaintiff on probation and ultimately terminating the plaintiff, interfering with plaintiff's "proscriptive" rights under FMLA U.S.C. § 2615(a)(2) of being free from retaliatory action by an employer for taking FMLA leave.

69.    As a proximate result of the foregoing, plaintiff has been denied

employment, has lost wages, benefits, promotional opportunities and bonuses,

and has incurred further physical and psychological damages thereby.


## AS FOR THE FOURTH CAUSE OF ACTION AGAINST NYIT

70.    Plaintiff hereby repeats and realleges each allegation contained in

paragraphs 1 through 69 above.

71.    Defendant, through its agent Rodika Zaika, in placing plaintiff on probation

outside the normal disciplinary procedure on pretextual grounds, and in forcing

plaintiff's resignation, knowing plaintiff suffered from severe hypertension,

constitutes negligent infliction of emotional distress toward plaintiff.

72.    Defendant, through its agent Rodika Zaika, in placing plaintiff on probation

and forcing plaintiff's termination, knowing plaintiff suffered from severe

hypertension, and that same would be aggravated if plaintiff were to be

immediately placed on probation without cause, constitutes outrageous conduct

towards plaintiff.

73.    As a proximate result of the foregoing, plaintiff has been denied

employment, has lost wages, benefits, promotional opportunities and bonuses,

and has incurred damages thereby. As a further proximate result of defendant's

12

actions plaintiff has suffered emotional distress, which has caused plaintiff

anxiety requiring therapy and has aggravated her medical conditions.

## AS FOR THE FIFTH CAUSE OF ACTION AGAINST NYIT

74.   Plaintiff hereby repeats and realleges each allegation contained in

paragraphs 1 through 73 above.

75.   Defendant, through its agent, Rodika Zaika, by placing plaintiff on

pretextual probation, out of the ordinary course of disciplinary procedure, and

forcing plaintiff's termination as a pretext, knowing that the plaintiff suffered

from severe hypertension and other unknown illnesses that were in the process

of being diagnosed, committed intentional infliction of emotional distress

toward plaintiff.

76.   Defendant's acts, through its agent Rodika Zaika, by forcing plaintiff to

resign, knowing plaintiff suffered from severe hypertension and other illnesses,

constitutes extreme and outrageous conduct towards plaintiff.

77.   Zaika, knowing plaintiff suffered from hypertension and other unknown

illnesses, intentionally caused such conduct toward plaintiff, hoping that she

would resign her position, which outcome came to pass.

78.   As a proximate result of the foregoing, plaintiff has been denied

employment, has lost wages, benefits, promotional opportunities and bonuses,

and has incurred damages thereby. As a further proximate result of defendant's

13

actions, plaintiff has suffered emotional distress requiring medication, psychological treatment and aggravation of her current illnesses.

## AS FOR THE SIXTH CAUSE OF ACTION AGAINST NYIT

79.    Plaintiff hereby repeats and realleges each allegation contained in paragraphs 1 through 78 above.

80.    As an employer, defendant is under a duty to staff its organization with supervisors who will neither intentionally nor negligently inflict emotional distress upon employees.

81.    Defendant retained Ms. Zaika as Director of Admissions.

82.    Defendant Zaika intentionally and/or negligently inflicted emotional distress upon plaintiff.

83.    Defendant breached its duty to plaintiff.

84.    Plaintiff suffered emotional harm due to Ms. Zaika's actions of placing plaintiff on probation for pretextual reasons upon return from her FMLA leave.

85.    Plaintiff has suffered injuries thereby.

86.    As a proximate result of the foregoing, plaintiff has been denied employment, has lost wages, benefits, promotional opportunities and bonuses, and has incurred damages thereby. As a further proximate result of defendant's actions, plaintiff has suffered emotional distress requiring medication, psychological treatment and aggravation of her current illnesses.

## AS FOR THE SEVENTH CAUSE OF ACTION AGAINST RODIKA

## ZAIKA

87.     Plaintiff hereby repeats and realleges each allegation contained in
paragraphs 1 through 86 above.

88.     Defendant Zaika, through her actions of placing plaintiff on probation
outside the ordinary disciplinary procedure as a pretext, knowing that plaintiff
suffered from hypertension and other unknown illnesses, committed negligent
infliction of emotional distress toward plaintiff.

89.     Defendant, by her actions of placing plaintiff on probation as a pretext,
knowing plaintiff suffered from severe hypertension and other unknown
illnesses, constitutes severe and outrageous conduct toward plaintiff.

90.     As a proximate result of the foregoing, plaintiff has been denied
employment, has lost wages, benefits, promotional opportunities and bonuses,
and has incurred damages thereby. As a further proximate result of defendant's
actions, plaintiff has suffered emotional distress and has had her current
medical conditions aggravated, and has developed a new anxiety diagnosis,
requiring medication and psychological therapy.

## AS FOR THE EIGHTH CAUSE OF ACTION AGAINST RODIKA

## ZAIKA

91.   Plaintiff hereby repeats and realleges each allegation contained in paragraphs 1 through 90 above.

92.   Defendant Zaika, through her actions of forcing plaintiff's resignation outside the ordinary disciplinary procedure as a pretext, knowing that plaintiff suffered from severe hypertension and other unknown illnesses, constitutes intentional infliction of emotional distress toward plaintiff.

93.   Defendant Zaika intended such actions to force plaintiff's resignation, and/or to aggravate plaintiff's condition enough to force her into further sick leave.

94.   Defendant, through her actions, and by forcing plaintiff to resign under pretext, knowing plaintiff suffered from severe hypertension and other unknown illnesses, constitutes extreme and outrageous conduct towards plaintiff.

95.   As a proximate result of the foregoing, plaintiff has been denied employment, has lost wages, benefits, promotional opportunities and bonuses, and has incurred damages thereby. As a further proximate result of defendant's actions plaintiff has suffered emotional distress, and has had her current medical conditions aggravated, causing plaintiff a new anxiety diagnosis requiring medication and psychological therapy.

16

## **PRAYER FOR RELIEF**

WHEREFORE, plaintiff respectfully requests that this Court:

(a) Enter a judgment that defendants' retaliation against plaintiff for taking leave violated 29 U.S.C. § 2615 of the Family and Medical Leave Act of 1993;

(b) Issue a mandatory injunction pursuant to 29 U.S.C. § 2617(1)(B) directing the defendant NYIT to rehire the plaintiff retroactive to July 18th 2005  to a non-hostile position equivalent to her prior position, without interruption to the benefits and/or seniority to which she was entitled as a fourteen-year employee of defendant.

(c) Issue a mandatory injunction, pursuant to 29 U.S.C. § 2617(1)(B), directing the defendant NYIT to reinstate all of plaintiff's employment benefits, including, but not limited to, her health insurance.

(d) Enter a judgment pursuant to 29 U.S.C. § 2617(a)(1)(A)(i)(II) against the defendants and in favor of plaintiff for the monetary losses plaintiff sustained as a direct result of defendant's retaliation against plaintiff for taking leave;

(e) An order prohibiting defendant from continuing or maintaining the policy, practice or custom of denying job benefits to employees on the basis of their FMLA status and/or leave.

(f) An award to plaintiff of her actual damages in an amount to be determined at trial for loss of wages, benefits, commissions and promotional opportunities, including an award of back pay for salary lost and front pay compensating plaintiff for loss of future salary, commissions and benefits;

(g)   An award to plaintiff against NYIT in an amount to be amount to be determined at trial to compensate the plaintiff for mental anguish, humiliation, embarrassment and emotional injury and physical manifestation thereof;

(h)   An award in favor of plaintiff against defendant Zaika, in an amount to be determined at trial, to compensate the plaintiff for mental anguish, humiliation, embarrassment and emotional injury and physical manifestations thereof;

(i)   An award to plaintiff of the costs of this action, together with her reasonable attorneys' fees;

(j)   Interest on all amounts due, and

(k) Award plaintiff such further and additional relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a jury trial to try all claims triable by jury.

Respectfully submitted,


Dated: February 8, 2006


Barbara Matthews

Attorney for Plaintiff
BM4281
P.O. Box 757
125 Jefferson Ave
St. James, New York 11780
Tel: (631) 584-0163

19